**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


WALTER LEE CHANEY,

       Petitioner,

vs.                                                          Case No. 8: 02-CV-1651-T-30MSS

JAMES V. CROSBY, JR.,

       Respondent.

_____/

## O R D E R

Petitioner, an inmate in a Florida penal institution proceeding *pro se*, initiated this cause of action by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his 1992 conviction for robbery with a firearm entered by the Thirteenth Judicial Circuit Court, Hillsborough County, Florida, Case No. 92-09749 (Dkt. 1 at 5). Petitioner filed an amended petition and supporting memorandum of law on December 13, 2002 (Dkt. 9 and 10). Respondent has filed a response to the amended petition (Dkt. 20), and Petitioner has filed a reply thereto (Dkt. 26). The matter is now before the Court for consideration on the merits of the amended petition.

### Background

Petitioner was charged by information on July 31, 1992, with armed robbery. Represented by court-appointed counsel, he proceeded to a trial by jury on November 17, 1992 (Dkt. 22, Ex. 9, Vol. II at Tr. 1). The jury found Petitioner guilty as charged (Dkt. 22, Ex. 9, Vol. II at Tr. 137). On December 23, 1992, Petitioner was sentenced to life, with a 15-year minimum mandatory term of imprisonment (Dkt. 22, Ex. 9, Vol. II at Tr. 168).

Petitioner's appellate counsel filed an *Anders*[1] brief identifying the following potential issues for appeal:

1.   Whether the trial court erred in failing to grant [Petitioner's] pretrial motion in limine as to the sequestration of witnesses; and

2.   Whether the trial court erred in failing to give the requested lesser included offense jury instructions over objections by trial counsel.

Dkt. 22, Ex. 1 at 5, 7.  On September 7, 1994, the appellate court entered an order advising Petitioner that appellate counsel had filed a brief asserting that the appeal had no arguable merit. Petitioner was, however, afforded an opportunity to file an additional brief calling the appellate court's attention to any matters Petitioner felt should be considered in connection with his appeal (Dkt. 22, Ex. 2).  Petitioner filed a *pro se* appellate brief on January 31, 1995, stating that he could find no meritorious argument to support the contention that the trial court committed significant error in his case, but requested, nonetheless, that the appellate court undertake a full review of the case to determine whether the evidence was sufficient to support his conviction (Dkt. 22, Ex. 4).  Petitioner did not present any argument on this issue.  On May 26, 1995, the appellate court affirmed Petitioner's conviction and sentence without written opinion. *See Chaney v. State*, 656 So.2d 1282 (Fla. 2d DCA 1995). The mandate issued on June 27, 1995.

Petitioner filed a *pro se* motion for state post-conviction relief pursuant to Fla. R. Crim. P. 3.850 on September 17, 1995, consolidating Case No. 92-9749 and three 1990 cases (Dkt. 22, Ex. 10, App. A-1).  Counsel was appointed to represent Petitioner, and an

---

[1]An *Anders* brief is filed by a court-appointed defense attorney who wants to withdraw from the case on appeal based on a belief that the appeal is frivolous.  In an *Anders* brief, the attorney seeking to withdraw must identify anything in the record that might arguably support the appeal. The court then decides whether the appeal is frivolous and whether the attorney should be permitted to withdraw.  *Anders v. California,* 386 U.S. 738, 744 (1967).

evidentiary hearing was held on Petitioner's Rule 3.850 motion on May 1, 1996.  The trial court denied the Rule 3.850 motion on May 10, 1996 (Dkt. 22, Ex. 10, App. E-1).

Petitioner appealed the trial court's decision in the instant case only.  Appellate counsel filed an *Anders* brief asserting there was no meritorious argument that the trial court committed significant reversible error (Dkt. 22, Ex. 12).  Appellate counsel directed the appellate court's attention to the following possible issues related to the instant case:

> Did defense counsel provide ineffective assistance of counsel by failing to properly investigate and prepare for trial, and by preventing [Petitioner] from testifying at trial.

Dkt. 22, Ex. 12 at 18.  In his *pro se* appellate brief, Petitioner raised the issues addressed in appellate counsel's *Anders* brief (Dkt. 22, Ex. 14).

On March 19, 1999, the appellate court affirmed the trial court's decision.  *See Chaney v. State*, 733 So. 2d 523 (Fla. 2d DCA 1999) (table decision). Petitioner's motion for rehearing was denied on April 30, 1999, and the mandate issued on May 24, 1999.  In the interim, Petitioner petitioned the Florida Supreme Court to conduct a *certiorari* review (Dkt. 22, Ex. 21). On April 26, 1999, the Florida Supreme Court dismissed Petitioner's petition for lack of jurisdiction.[2]  *See Chaney v. State*, 732 So. 2d 326 (Fla. 1999) (table decision).

While his Rule 3.850 motion was pending, Petitioner filed a *pro se* motion for relief pursuant to Fla. R. Crim. P. 3.800(a) on December 14, 1998, consolidating the present case with his three 1990 cases. On February 1,1999, the Rule 3.800 motion was denied based on the trial court's finding that the issues Petitioner raised should have been presented on direct appeal. Petitioner did not file a timely notice of appeal.

---

[2]See *Harmon v. Barton*, 894 F.2d 1268, 1272 (11th Cir.) (recognizing that in Florida, a per curiam affirmance rendered without opinion cannot be reviewed by the state's supreme court), *cert. denied*, 498 U.S. 832 (1990).

Not deterred, on May 12, 1999, Petitioner filed a *pro se* petition for writ of habeas corpus requesting leave to file a "belated appeal" of the claims raised in his Rule 3.850 motion that the trial court found to be procedurally defaulted.  Petitioner alleged ineffective assistance of appellate counsel as cause for his failure to raise the claims (Dkt. 22, Ex. 25). The state district court denied the petition without written opinion on August 20, 1999.  *See Chaney v. State*, 743 So. 2d 1085 (Fla. 2d DCA 1999) (table decision).

On September 5, 1999, Petitioner filed a second Rule 3.850 motion *pro se* consolidating the present case with his three 1990 cases (Dkt. 28).  He filed an amended motion on October 5, 1999 (Dkt. 29).  On November 29, 1999, the trial court denied the amended motion (Dkt. 22, Ex. 30).  On June 7, 2000, the appellate court affirmed the trial court's decision without written opinion. *See Chaney v. State*, 764 So. 2d 587 (Fla. 2d DCA 2000) (table decision). The mandate issued July 17, 2000.

On August 21, 2000, Petitioner filed a second Rule 3.800(a) motion *pro se* consolidating the present case with his three 1990 cases (Dkt. 22, Ex. 36).  On December 29, 2000, the Rule 3.800(a) motion was denied (Dkt. 22, Ex. 37).  The appellate court affirmed the trial court's decision on July 6, 2001.  *See Chaney v. State*, 810 So.2d 932 (Fla. 2d DCA 2001) (table decision).  On January 9, 2002, the appellate court granted Petitioner's motion for rehearing, withdrew its July 6, 2001 opinion, and entered a substituted opinion reversing its order affirming the trial court's decision denying relief in the 1990 cases, but affirming on the remaining claims[3] (Dkt. 22, Exs. 40; 41). *See Chaney*

---

[3]The proceedings on remand pertained only to the1990 cases. On May 6, 2002, the state circuit court denied Petitioner's claims in the 1990 cases on the basis of laches. The order in the 1990 cases was followed by a silent affirmance. *Chaney v. State*, Case No. 2D02-2492 (Fla. 2d DCA Sept. 25, 2002) [no table available]. Rehearing was denied October 18, 2002, and the mandate issued on November 14, 2002.

*v. State*, 805 So. 2d 1039 (Fla. 2d DCA 2002). The mandate issued January 29, 2002.[4]

On December 11, 2000, while his Rule 3.800(a) motion was pending, Petitioner filed a petition for federal habeas relief pursuant to 28 U.S.C. § 2254.   The petition was dismissed on procedural grounds on March 26, 2001. *See Chaney v. Moore*, Case No. 8:00-CV-2525-T-24TGW (M.D. Fla. 2001).

Petitioner filed another Rule 3.800(a) motion on April 2, 2001, citing *Apprendi v. New Jersey*, in support of his request for relief.  The motion was summarily denied, and there is no record of an appeal of the decision having been filed.[5]

On May 1, 2001, Petitioner filed a second § 2254 petition, which was dismissed as a mixed petition on May 2, 2001, *see Rose v. Lundy*, 455 U.S. 509 (1982) and 28 U.S.C. § 2254(b)(1)(A).  *See Chaney v. Moore*, Case No. 8:01-CV-846-T-26MAP (M.D. Fla. 2001). Petitioner filed a third § 2254 petition on July 23, 2001, which was dismissed on September 6, 2001, at Petitioner's request.  *See Chaney v. Moore*, Case No. 8:01-CV-1368-T-27TBM (M.D. Fla. 2001).

On September 13, 2001, while his appeal of the Rule 3.800(a) motion was pending, Petitioner filed another Rule 3.850 motion in Case No. 92-09749 (Dkt. 22, Ex. 42).  Since the motion did not allege a recognized exception to the two-year limitation under Rule 3.850, it was denied as untimely and successive on November 27, 2001 (Dkt. 22, Ex. 43).

---

[4]The proceedings on remand pertained only to the1990 cases. On May 6, 2002, the state circuit court denied Petitioner's claims in the 1990 cases on the basis of laches. The order in the 1990 cases was followed by a silent affirmance. *Chaney v. State*, Case No. 2D02-2492 (Fla. 2d DCA Sept. 25, 2002) [no table available]. Rehearing was denied October 18, 2002, and the mandate issued on November 14, 2002.

[5]The Court takes judicial notice of information available on the database maintained by the Clerk of Court, Thirteenth Judicial Circuit, Hillsborough County, Florida, http://www.hillsclerk.com, viewed on September 7, 2005. *See* Fed. R. Evid. 201.

The appellate court affirmed the trial court's decision on June 5, 2002. The mandate issued June 26, 2002.  *See Chaney v. State*, 821 So.2d 1064 (Fla. 2d DCA 2002).

Petitioner filed a fourth § 2254 petition on June 24, 2002.  The petition was dismissed for abuse of the judicial process on July 16, 2002.  *See Chaney v. Moore*, Case No. 8:02-CV-1145-T-27MAP (M.D. Fla. 2002).  Petitioner filed the instant petition on September 8, 2002 (Dkt. 1). Finding that the petition contained both exhausted and unexhausted claims, the Court advised Petitioner that his petition was subject to dismissal as a "mixed petition," *see Rose v. Lundy*, 455 U.S. 509 (1982) and 28 U.S.C. § 2254(b)(1)(A).   Petitioner abandoned the claims raised in the original petition[6] when he filed his amended petition and supporting memorandum of law on December 13, 2002 (Dkts. 9 and 10). Respondent has filed a response to the amended petition asserting that two of the grounds raised therein are procedurally barred and the remaining claims of ineffective assistance of counsel fail to meet the criteria for § 2254 relief.

## Standard of Review

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003); *Maharaj v. Sec'y of Dept. of Corr.*, 304 F.3d 1345, 1346 (11th Cir. 2002). Pursuant to § 2254, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application, of clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[6]*See, e.g., Fritz v. Standard Life Ins. Co.*, 676 F.2d 1356, 1358 (11th Cir. 1982) (finding that an amended complaint under the federal rules supercedes the original complaint).

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003); *Harrell v. Butterworth*, 251 F.3d 926, 930 (11th Cir. 2001).   "Clearly established Federal law" is the governing legal principle, not the dicta, set forth by the United States Supreme Court at the time the state court issues its decision. *Lockyer v. Andrade*, 538 U.S.63, 71-72 (2003).  Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that the state court's conclusion is contrary to clearly established governing federal law.  *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003); *Clark v. Crosby*, 335 F.3d at 1308-10; *Washington v. Crosby*, 324 F.3d 1263, 1265 (11th Cir. 2003).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of § 2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  *Mitchell v. Esparza*, 540 U.S. at 17 (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) (hereinafter "Williams I")).   *See also Price v. Vincent*, 538 U.S. at 639; *Lockyer v. Andrade*, 538 U.S. at 75-77.  A state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent.  *Mitchell v. Esparza*, 540 U.S. at 17; *Early v. Packer*, 537 U.S. 3, 8 (2002);  *Parker v. Sec'y of Dep't of Corr.*, 331 F.3d 764, 775-76 (11th Cir. 2003).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams I*, 529 U.S. at 411.   A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct governing legal rule from Supreme Court cases but unreasonably applies it to the facts of the particular inmate's case; or if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or unreasonably refuses to extend that principle to a new context where it should apply. *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000).  The "unreasonable application" inquiry requires the state court decision to be more than incorrect or erroneous; it must be objectively unreasonable.  *Mitchell v. Esparza*, 540 U.S. at 18; *Price v. Vincent*, 538 U.S. at 639; *Lockyer v.  Andrade*, 538 U.S. at 75-77; *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002); *Penry v.  Johnson*, 532 U.S. at 791-792; *Williams I*, 529 U.S. at 409-10.

"Whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *See Holland v. Jackson*, 542 U.S. 649, ___, 124 S.Ct. 2736, 2737-2738 (2004) (citing *Yarborough v. Gentry*, 540 U.S. 1 (2003)) (per curiam) (denying relief where state court's application of federal law was supported by the record); *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); *cf. Bell v. Cone*, 535 U.S. at 697, n. 4 (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Petitioner has the burden of overcoming all state court factual determinations by clear and convincing evidence.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *Henderson v. Campbell*, 353 F.3d at 890-91.  The statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001), *cert denied*, 534 U.S. 1046 (2001).  Because of the deference due the state court's findings of fact and conclusions of law, the state court's determination of each of Petitioner's claims largely governs review of those same claims.  Consequently, in order to determine the reasonableness of the state court's determinations, the review of each of Petitioner's grounds will include a recitation of the state court's analysis.

A petitioner who "failed to develop" the factual basis for a claim while in state court as a result of the petitioner's lack of diligence is barred from doing so in federal court, subject to the very narrow exceptions set out in § 2254(e)(2). *Williams v. Taylor*, 529 U.S. 420, 433-34 (2000) (hereinafter *"Williams II")*.

Title 28 U.S.C. § 2254(b) requires the exhaustion of state court remedies before a federal habeas corpus application will be entertained. Where a petitioner has not "fairly presented" a federal constitutional claim to the state court, he has failed to exhaust his state court remedies. *Anderson v. Harless*, 459 U.S. 4 (1982); *Rose v. Lundy*, 455 U.S. 509 (1982); *Picard v. Connor*, 404 U.S. 270 (1971). The Supreme Court has rejected the theory that by presenting the facts on which an alleged constitutional violation is based a petitioner implicitly raises the claim. *Anderson v. Harless*, 459 U.S. at 6. A petitioner must make the state court aware that the claims asserted present federal constitutional issues. *Snowden*

*v. Singletary*, 135 F.3d 732, 735 (11th Cir.), *cert. denied*, 525 U.S. 963 (1998).

The failure of a federal habeas petitioner to adhere to state procedural rules governing the timely presentation of claims will bar federal review of those claims in a subsequent federal habeas corpus proceeding. *See Wainwright v. Sykes*, 433 U.S. 72 (1977); *Sims v. Singletary,* 155 F.3d 1297, 1311 (11th Cir. 1998). The federal habeas court must defer to the state court's interpretation of its procedural rules, and must enforce those rules as well as enforcing the procedural rulings of the state courts. *See Lindsey v. Smith*, 820 F.2d 1137 (11th Cir. 1989).

Finally, this Court cannot presume that a Florida court ignores its own procedural rules when the Court issues only a one-sentence denial of relief, which is essentially a summary dismissal.  Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. *See Coleman v. Thompson* , 501 U.S. 722, 735-36 (1991); *Kight v. Singletary*, 50 F.3d 1539, 1544-1545 (11th Cir. 1995) (applying procedural bar where state court's summary dismissal did not explain basis for ruling); *Tower v. Phillips*, 7 F.3d 206, 209 (11th Cir. 1993) (applying bar where state court did not rule on claims presented).

### Evidentiary Hearing

Petitioner asserts that he is entitled to an evidentiary hearing on the claims asserted in his amended § 2254 petition.  Rule 8 of the Rules Governing Section 2254 Cases provides, in pertinent part, that once all of the parties' documents have been filed with the court,  "the judge. . .shall review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." *See also* Rules Governing Section 2254 Cases 8(a) advisory committee note (stating that "[s]ince the function of an evidentiary hearing is to try issues of fact. . . , such a hearing is unnecessary when only issues of law are raised.")

- 10 -

(citation omitted).

A petitioner has the burden of establishing the need for an evidentiary hearing. *See Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir.) (en banc), *cert. denied*, 469 U.S. 874 (1984). Petitioner has not met that burden.  The Court finds that an evidentiary hearing is not required in this matter.  *See Jones v. United States*, 304 F.3d 1035, 1045 n.18  (11th Cir. 2002); *In re Boshears,* 110 F.3d 1538, 1541 n.1 (11th Cir. 1997) (recognizing that "hearing and findings of fact [are] not required . . . where 'the files and records of the case conclusively show that the prisoner is entitled to no relief'" (quoting 28 U.S.C. § 2255)).

### Discussion

In his amended petition, Petitioner raises the following claims:

1.   Petitioner was denied his Sixth Amendment right to effective assistance of counsel when trial counsel (1) failed to call a witness or secure the witness's testimony; (2) failed to properly investigate and prepare for trial; and (3) refused to allow Petitioner to testify;

2.   The prosecutor presented false testimony and impermissibly vouched for a witness; and

3.   Petitioner's right to confront adverse witnesses was violated when statements by the victim, the state and investigating officers were admitted during the trial.  These were adverse witnesses which the court, the state, and trial counsel failed to subpoena to testify.

Acknowledging that the claims presented in Ground One are timely and properly exhausted, Respondent contends that they do not survive scrutiny under the AEDPA standard of review. Respondent further asserts that Grounds Two and Three are procedurally defaulted.  Having reviewed the record and considered the arguments raised by the parties in their respective briefs, applicable statutes, and controlling case law, for reasons set forth below, the Court finds that Petitioner has not established that he is entitled to federal habeas relief.

**Ground One**

In the first ground for relief in the amended petition, Petitioner alleges that he was denied his Sixth Amendment right to effective assistance of counsel, faulting trial counsel for (1) not locating and subpoenaing exculpatory and alibi witnesses; (2) failing to perform a proper pretrial investigation and prepare for trial; and (3) refusing to allow Petitioner to testify. These claims were raised in the Rule 3.850 motion Petitioner filed on September 17, 1995 (Dkt. 22, Ex. 10, App. A-1).

In order to show a violation of the Sixth Amendment right to counsel, Petitioner must satisfy the two-pronged test enunciated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984): (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defendant, i.e., "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687-88. *See also Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Williams v. Taylor*, 529 U.S. 362 (2000).

A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland v. Washington*, 466 U.S. at 690). This judicial scrutiny is "highly deferential." *Id.* A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland v. Washington*, 466 U.S. at 689-90; *see also Bell v. Cone*, 535 U.S. 685, 698 (2002). Because the ultimate resolution of the ineffective assistance of counsel claims are mixed questions of law and fact, *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001); *Meeks v. Moore*, 216 F.3d 951, 959 (11th Cir. 2000), the presumption of correctness

contained in § 2254(e)(1) does not apply to this determination. *Parker v. Head*, 244 F.3d 831, 835-37 (11th Cir. 2001), *cert denied*, 534 U.S. 1046 (2001). State court findings of historical facts made in the course of evaluating an ineffectiveness claim are, however, subject to a presumption of correctness under 28 U.S.C. § 2254(e)(1). "[T]he *Strickland* test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims." *Williams*, 529 U.S. at 391.

"To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled. ' " *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (en banc), *cert. denied*, 536 U.S. 964 (2002) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.), *cert. denied*, 513 U.S. 899 (1994).

The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take. *See Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000), *cert. denied*, 531 U.S. 1204 (2001). An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment. *Id.* at 1314 n.15.

Thus, as *Chandler* makes clear, the presumption afforded counsel's performance "is not . . . that the particular defense lawyer in reality focused on and, then, deliberately

- 13 -

decided to do or not to do a specific act." *Id.* Rather, the presumption is "that what the particular defense lawyer did at trial – for example, what witnesses he presented or did not present – were acts that some reasonable lawyer might do." Id.

Finally, "[n]o absolute rules dictate what is reasonable performance for lawyers." *Chandler*, at 1317. Absolute rules would interfere with counsel's independence – which is also constitutionally protected – and would restrict the wide latitude counsel have in making tactical decisions. *Id.* The reasonableness of counsel's performance is determined through deferential review of all of the circumstances from the perspective of counsel at the time of the alleged errors. *Strickland v. Washington*, 466 U.S. at 689. Every effort should be made to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's perspective at the time." *Id.*

In applying the AEDPA standard to ineffective assistance of counsel claims, the federal court's focus is on whether the state decision can be viewed as objectively reasonable. *See Wellington v. Moore*, 314 F.3d 1256, 1261 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide." (internal quotation omitted)), *cert. denied*, 535 U.S. 1107 (2002). As recently as November 4, 2002, the Supreme Court reiterated the highly deferential standard for evaluating state-court rulings in *Woodford v. Visciotti*:

> Under § 2254(d)'s "unreasonable application" clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied *Strickland* incorrectly. See *Bell v. Cone,* 535 U.S. 685, 698-699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Williams, supra,* at 411, 120 S.Ct. 1495. Rather, it is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. An "*unreasonable* application of federal law is different from an *incorrect* application of federal law."

537 U.S. 19, 24-25 (2002) (reversing the circuit court's grant of habeas relief to a state

prisoner under death sentence, the court found that the circuit court ultimately substituted its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d) (citation omitted)).

In the instant case, the trial court appointed counsel to represent Petitioner and conducted an evidentiary hearing on the issues raised in his Rule 3.850 motion.  After hearing testimony by Petitioner, trial counsel, and Inmate Michael Brown, one of Petitioner's "alibi" witnesses, the trial court made the following findings on the record:

> All right. As to Issue Number One, ineffective assistance of counsel, I do not find that there were any acts or omissions committed by trial counsel that would arise to the level of ineffective assistance of counsel.  I don't find any acts or omissions that were improperly performed.

> The allegation is failure to investigate. The record clearly reflects that. The testimony of the trial counsel clearly refutes that. There were depositions taken of all of the witnesses. The depositions are in the court file. The defendant was provided with the depositions and had every opportunity to review them according to his correspondence back to trial counsel.

> The allegation that trial counsel failed to interview alibi witnesses, it is clear from this record that no alibi witnesses, names or even the fact that a witness existed as an alibi witness was ever provided to trial counsel. She can't fabricate alibi witnesses out of, you know, thin air.

> The information was never given to trial counsel. And there were numerous discussions with the defendant, both in person and by telephone and through written correspondence with counsel. That information was never given. So there was no omission by trial counsel for failing to interview alibi witnesses when there weren't any such thing known.

> Counsel refused to allow the defendant to testify on his own behalf. I find that that is clearly refuted by the record, that they discussed this matter, the fact that his prior  record was discussed. The fact that it –  certainly the prior record and the number of convictions would come out, if not the nature of the conviction, if, for some reason, the defendant were to open the door or – well, in any event, I find that it was discussed and that the defendant made a personal, conscientious [sic], voluntarily [sic] decision not to testify in this case, contrary to what he says.

> I accept the testimony of counsel as being very credible on that issue. And I believe that's all of the allegations of ineffectiveness.

So while we're talking about it, I'll go to the fourth issue, that the defendant was denied the right to testify on his own behalf. I find, based upon the testimony of this hearing, that that is simply not so. He was not denied the right to testify on his own behalf.

I will say that, at that time when this case was tried, that this Court tried the case. And it was not my practice at that time to inquire personally of the defendant whether he or she wished to testify or not and explain that Constitutional right. At that time, I was allowing that to be a matter, as I feel it should be, between counsel and the defendant.

But since the opinion issued in *Gill*,[7] I have made it a practice to inquire personally of the defendant outside of the presence of the jury, because the judges in that decision indicated that it would be helpful in this very type of situation. So I agree with them. It is helpful, and I do it now. But I didn't do it then.

Based upon this record, I find that it was the defendant's decision not to testify and that he certainly was aware of his right to do so or not to do so.

Dkt. 22, Ex. 20, Vol. I, Supp. Hr'g. Tr. at 99-101 (footnote added).

On May 10, 1996, the trial court entered its written decision denying Petitioner's Rule 3.850 motion, finding as follows:

THIS CAUSE came before the Court upon Defendant's Pro Se Motion for Post Conviction Relief pursuant to Florida Rule of Criminal Procedure 3.850 filed on September 17, 1995, and the Court having reviewed the motions, the files, records along with the evidentiary hearing finds that the Defendant is entitled to no relief.

As to Issue One, ineffective assistance of counsel, the Court finds that there were no acts or omission by trial counsel that would rise to the level of ineffective assistance of counsel. The allegation of failure to investigate alibi witness was refuted by trial [c]ounsel's testimony that no alibi witness's names, or even the fact that a witness existed as an alibi witness was ever provided to trial counsel.

Defendant also alleges that trial counsel refused to allow him to testify on his own behalf. This Court finds that it was clearly refuted by the record[,] that his rights were discussed with trial counsel as well as his prior record.  The Court

---

[7]*Gill v. State*  632 So.2d 660 (Fla. 2d DCA 1994) (defendant's claim that he was denied effective assistance of counsel in sexual battery prosecution when defense counsel rested case without consulting defendant, who was prepared and desired to testify, made a prima facie showing of defendant's entitlement to post-conviction relief, requiring an evidentiary hearing).

further finds that the defendant made a conscientious, voluntary decision not to testify.

Dkt. 22, Ex. 20, Vol. I at R. 72.  On March 19, 1999, the appellate court affirmed the trial court's decision.  *See Chaney v. State*, 733 So. 2d 523 (Fla. 2d DCA 1999) (table decision). Although the trial court failed to set forth the federal standard of review for Petitioner's claims, a state court does not have to cite the Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent. *Mitchell v. Esparza*, 540 U.S. at 17; *Early v. Packer*, 537 U.S. 3, 8 (2002); *Parker v. Sec'y of Dep't of Corr.*, 331 F.3d 764, 775-76 (11th Cir. 2003).

The record supports the trial court's findings. Ms. Lanetira Hicks, the victim's cousin, and Mrs. Annie Andrews,[8] the victim's grandmother, were identified as being at the scene when the robbery occurred.  Petitioner asserts that since Ms. Hicks and Mrs. Andrews were both present during the robbery, their testimony would have exonerated him of any role in the robbery. Petitioner also contends that the testimony of Ms. Hicks would have established that both she and the victim were unable to identify Petitioner as the robber (Dkt. 22, Vol. 1 at R. 38-41).

---

[8]Mrs. Andrews is also referred to in the record as "Mrs. Hawkins."  This is, however, of no import to the outcome of these proceedings. The confusion is likely attributable to the fact that she was identified several times in the record as the grandmother of the victim, Greg Eugene Hawkins, rather than by name.

Trial counsel testified that when she became aware that Ms. Hicks and Mrs. Andrews witnessed the robbery, she attempted to ascertain what effect their testimony might have on Petitioner's defense.  Trial counsel deposed Ms. Hicks, *see* Dkt. 29, Ex. 1, and as the trial transcript confirms, the State attempted, albeit unsuccessfully, to subpoena Ms. Hicks to testify against Petitioner (Dkt. 22, Ex. 9, Vol. II  at Tr. 4-5).  The State was, however, unable to locate her to effect service of a subpoena.

Trial counsel actually used the State's failure to produce Ms. Hicks at trial as part of Petitioner's defense, arguing to the jury that the only evidence against Petitioner was the victim's testimony, which was undermined by discrepancies between the description of the robber he gave to the investigating officers and Petitioner's physical appearance (Dkt. 22, Ex. 9, Vol. II at Tr.105).  During her closing argument, trial counsel argued, as Petitioner now does, that the State could not even establish beyond a reasonable doubt that a robbery had occurred:

> You also heard the testimony that there was six hundred dollars worth of jewelry taken, at least.  This man is a person who is unemployed, and he's also an individual who lives in a poor neighborhood and he's sitting out on a porch with apparently a grandmother, a cousin, neighbors all over the place, people on the street.  Not one of these persons came forward and said, oh, yeah, there was a robbery, that robbery did take place and, yeah, that's the guy who did it.

Dkt. 22, Ex. 9, Vol. II at Tr. 105. Trial counsel used Ms. Hicks's absence to support this argument:

> Why didn't Lanetira Hicks come in?  Why didn't she come in and testify?  If she was standing right there, there is no reason she's not here.  She's supposedly twenty years old and healthy.  The only reason she's not here is because she's . . . . The only reason that she's not here is that she's not going to support what Mr. Hawkins said.  She's not going to identify. . . . She choose not to come in, and the reason she did that is because she wasn't going to support what Mr. Hawkins said.  That is a reasonable doubt.  Reasonable doubt comes from lack of evidence.

Dkt. 22, Ex. 9, Vol. II at Tr. 119.

As to Mrs. Andrews, trial counsel testified that when she received Mrs. Andrews's name in the material she was provided during discovery, she had a subpoena issued for Mrs. Andrews to appear to be deposed. The address that had been provided to trial counsel was, however, incorrect, and trial counsel's investigator was unable to locate Mrs. Andrews (Dkt. 22, Ex. 20, Vol. I, Supp. Hr'g Tr. at 69-70). The Eleventh Circuit has held that trial counsel is not ineffective for failing to call a partially identified but unavailable witness. *See Williamson v. Moore*, 221 F.3d 1177, 1181 (11th Cir. 2000) (holding that "[c]ounsel cannot be said to be ineffective for failing to call an unavailable witness." (citation omitted)).

Petitioner alleges that trial counsel was ineffective for failing to secure the testimony of alibi witnesses Michael Mandy, Michael Brown, and Don Wilson, and eyewitness Thomas Jones. According to Petitioner, testimony by Mandy, Brown, and Wilson would have established that he was elsewhere when the robbery occurred, and Jones would have testified that he observed the robbery while standing in front of the victim's house, and Petitioner was not the robber. This claim was raised in Petitioner's Rule 3.850 proceedings (Dkt. 22, Ex. 20, Vol. I at R. 38-39).

During the Rule 3.850 evidentiary hearing, trial counsel testified that when she asked Petitioner if he knew of any witnesses she could subpoena on his behalf, he responded that he did not know where he was or what he was doing at the time the robbery occurred, but he definitely knew he "didn't do it" (Dkt. 22, Ex. 20, Vol. I, Supp. Hr'g Tr. at 55). According to notes in trial counsel's case file, this is the same information Petitioner gave her investigator during his initial interview. *Id.* at 56.

Trial counsel further testified that Petitioner was very involved in the discovery phase of the trial.  She provided Petitioner copies of the documents she received during discovery and the depositions of the State's witnesses.  According to trial counsel, Petitioner sent her written comments regarding his case and called her frequently to discuss information contained in the materials she provided to him.  Trial counsel testified, however, that Petitioner never gave her the names of any potential witnesses – alibi or otherwise.  *Id.* at 57. Trial counsel also testified that before jury selection commenced, she again attempted to elicit information from Petitioner that she could use in his defense regarding his activities on the day of the robbery and witnesses that she might call to testify for him.  Trial counsel stated that Petitioner remained adamant that he did not commit the robbery, but "he couldn't tell [her] where he was or who he was with at [the] time of the incident." *Id.* at 61.

 Petitioner testified that when he was first contacted by the investigator for the public defender's officer, he did not provide any information which would assist in his defense because he was under the influence of cocaine and so angry at being arrested that he "really didn't want to talk to nobody" (Dkt. 22, Ex. 20, Vol. I, Supp. Hr'g. Tr. at 37). According to Petitioner, had he wanted to do so, he could not have provided the information regarding the identify of his prospective witnesses at that time because he had just met "these guys," and it took him "a month, maybe a month and a half, to locate them through friends." *Id.*

Petitioner further testified that he provided trial counsel a list of the witnesses' names "between October 22nnd [sic] and 26," while he was in court on a pretrial matter.  He did not, however, give her addresses where she could locate any of the witnesses, and he did not tell her where he was or what he was doing when the robbery occurred. *Id.* at 44.

After hearing testimony from Petitioner, trial counsel, and one of the witnesses Petitioner faults trial counsel for not investigating, the trial court found that this claim lacks merit. Petitioner has failed to rebut the presumption of correctness accorded the trial court's finding that "no alibi witness's names, or even the fact that a witness existed as an alibi witness was ever provided to trial counsel." Petitioner's failure to disclose the fact that witnesses were available who would have provided exculpatory testimony on his behalf does not render trial counsel's performance deficient.  "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Strickland v. Washington*, 466 U.S. at 691. Moreover, were the Court to find that there was any error in this regard, it was error invited by Petitioner's silence.  It has long been recognized that a petitioner cannot benefit from an error invited or induced by himself. *Diaz v. Secretary for the Dep't. of Corrs.*, 362 F.3d 698, 702 (11th Cir. 2004); *United States v. Snow*, 139 F.3d 822, 838 (11th Cir. 1998) (finding that "defendant should not benefit from introducing error at trial with the intention of creating grounds for reversal on appeal"); *United States v. Garrett*, 727 F.2d 1003, 1012 (11th Cir.), *cert. granted on other grounds*, 469 U.S. 814 (1984); *Roland v. United States*, 295 F.2d 471, 472 (5th Cir. 1961)[9] (fact that the witness gave adverse answer to counsel's questions during cross-examination did not warrant relief because if it was an error, it was an error invited by the appellant). As the trial court observed, trial counsel cannot fabricate witnesses out of thin air.

---

[9]Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court. *See Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Turning to Petitioner's assertion that trial counsel prevented him from testifying, a criminal defendant has a fundamental right guaranteed by the Fifth and Sixth Amendments, made applicable to the states by the Fourteenth Amendment, "to present his own version of events in his own words." See *Rock v. Arkansas*, 483 U.S. 44, 52 (1987). This claim was raised in Petitioner's Rule 3.850 motion.

During the Rule 3.850 evidentiary hearing, Petitioner testified that he and trial counsel discussed the possibility that he might testify, and she advised him that if he testified, he could be questioned regarding his prior criminal convictions, a large number of which were for robbery (Dkt. 22, Ex. 20, Vol. I, Supp. Hr'g Tr. at 45). Petitioner further testified that he told trial counsel that he did not want to testify. *Id.* This was Petitioner's position when the trial commenced. *Id.*

According to Petitioner, during opening statements, he changed his mind about testifying and "whispered to [trial counsel] while the trial was going on that [he] wanted to testify" (Dkt. 22, Ex. 20, Vol. I, Supp. Hr'g Tr. at 46). Petitioner testified that he explained to trial counsel that he "wasn't being held accountable for what he was in on – for the charges that [he] had been convicted on, but for the charge [he] was being charged with at the time." *Id.* He does not disclose when he "explained" this to her. He also testified that trial counsel told him he would have an opportunity to testify, but the trial was over before he got a chance to say anything. *Id.* at 47.

Trial counsel testified that she has no recollection of this communication. Trial counsel testified that she discussed this matter with Petitioner before the trial commenced and again before the defense rested (Dkt. 22, Ex. 20, Vol. I, Supp. Hr'g Tr. at 62-63).

According to trial counsel, Petitioner consistently maintained he did not want to testify because he did not want to risk exposure of his criminal record. *Id.*

During the trial, the victim testified that he saw Petitioner in a bar approximately two months after the robbery occurred and recognized him as the robber. In the memorandum of law submitted in support of his § 2254 petition, Petitioner contends that he decided that he wanted to take the stand when he heard the victim testify that he approached Petitioner in the bar and said, "What's up, Walt." Trial counsel's objection to the victim's testimony was overruled. According to Petitioner, he "ask[ed] counsel to let [him] testify right after her objection and discussion with the court – all counsel told [him] was [he] would get the chance to talk – Before [he] knew what was going on, the jury found [him] guilty" (Dkt. 10 at 19).

The trial court found that after trial counsel discussed his right to testify with Petitioner, he made a conscious, voluntary decision not to testify (Dkt. 22, Ex. 20, Vol. I at R. 72; Supp. Tr. 101). As stated *supra*, the trial court's findings of historical facts made in the course of evaluating an ineffective assistance of counsel claim are subject to a presumption of correctness under 28 U.S.C. § 2254(e)(1). Petitioner has not overcome the presumption of correctness accorded the trial court's factual determinations by clear and convincing evidence. *See id.*

When the *Strickland* standards are applied to ineffective assistance of counsel claims, those claims will fail if the petitioner cannot establish either prong of the *Strickland* test. *See Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998). *See also Strickland v. Washington*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."). Having failed to demonstrate that trial counsel's performance

was deficient, Petitioner cannot satisfy the first prong of the *Strickland* test.

As set forth *supra*, in order to secure federal habeas relief on the grounds presented in his petition, Petitioner must demonstrate that the trial court's adjudication of the claims resulted in a decision that was contrary to or involved an unreasonable application of "clearly established federal law as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). Having failed to meet this burden, Petitioner has not demonstrated that he is entitled to federal habeas relief on his ineffective assistance of counsel claims.

### Grounds Two and Three

In his second ground for relief, Petitioner asserts a claim of prosecutorial misconduct. Petitioner contends that the prosecutor misled the jury during his opening statement when he told them that the victim was the only witness to the crime, and again during closing argument when he stated that there were other witnesses, but they had left the scene by the time the police arrived.  Petitioner also argues that the prosecutor impermissibly vouched for the victim when he referred to the victim's military service and honorable discharge.

The third ground for relief Petitioner raises is that his right to confront adverse witnesses was violated when the victim gave the investigating officer a description of the robber based on information given to the victim by other "blockheads" in the neighborhood rather than his personal observations, and this information was presented to the jury when the investigating officer testified about the description the victim gave of the robber.

Respondent asserts that these claims are not properly before this Court because the trial court found that they were timebarred. *See* Dkt. 22, Ex. 43.  In his reply, Petitioner acknowledges that he did not present these two claims to the trial court until September 13, 2001, when he filed his third Rule 3.850 motion (Dkt. 15).  *See* Dkt. 22, Ex. 42.  Since the trial court found that the claims were timebarred, the state appellate court's decision affirming the trial court's decision is presumed to rest on independent and adequate state procedural grounds. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("[W]here . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."); *Harmon v. Barton*, 894 F.2d at 1270 (where state trial court finds procedural default, state appellate court's silent affirmance is a finding of procedural default by the last state court to rule on the question).

When Petitioner realized that Respondent was asserting that these two grounds are not properly before this Court because the trial court found that they were timebarred, he filed a motion to supplement his amended petition with a fourth ground he contends establishes sufficient "cause and prejudice" to warrant disregarding the procedural default:

> Petitioner was denied his Sixth Amendment right to effective assistance of counsel when appellate counsel failed to raise the issues set forth in Grounds Two and Three on direct appeal.

Dkt. 15. While this argument was never presented as a substantive claim in state court, it is essentially the same argument Petitioner made in his request for leave to file a belated appeal of Grounds Two and Three in state court.  The state court rejected his request without written opinion.  His request to add this claim to his § 2254 petition was, likewise,

rejected because the claim is timebarred, and it does not relate back to any of the claims asserted in the original § 2254 petition, *see* Fed. R. Civ. P. 15(c).

The federal court must dismiss those claims or portions of claims that either have been explicitly ruled procedurally barred by the highest state court considering the claims, *Harris v. Reed*, 489 U.S. 255 (1989), or are not exhausted but would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).  In rejecting the contention that a federal court could make an independent review of whether a state court correctly applied its procedural default rule, the Eleventh Circuit held that "state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters."   *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997).  Moreover, Federal courts may not address claims that have not been presented in state court if the state court would have found the claims to be procedurally defaulted. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).

The petitioner must present his allegations of cause to excuse a clear procedural bar in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Cause must ordinarily be something external to the defense "which prevented counsel from constructing or raising the claim." *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).  *See also McCleskey v. Zant*, 499 U.S. 467, 491 (1991) (holding that "[f]or cause to exist, the external impediment, whether it be government interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim.").  As stated *supra*, Petitioner asserts that his failure to assert these claims in a timely manner is attributable to ineffective assistance of appellate counsel.  This argument is, however, unavailing.

While ineffective assistance of counsel may satisfy the cause exception to a procedural bar,  in order to do so, the claim of ineffective assistance must have merit. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000), *cert. denied*, 531 U.S. 1131 (2001).  Moreover, an ineffective assistance of counsel claim asserted as cause for another procedurally defaulted federal claim can, itself, be procedurally defaulted, and unless the state prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim. *See Murray v. Carrier*,  477 U.S. 478, 489 (1986).

Petitioner fails to assert sufficient cause for his failure to timely raise the ineffective assistance of appellate counsel claim in state court, thus it cannot be successfully asserted as cause for his procedural default of Grounds Two and Three.

Petitioner asserts that the Court should consider the merits of his procedurally defaulted claims nonetheless because he is actually innocent of the offense of conviction. *See Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citations omitted) (holding that a federal habeas petition may be reviewed despite a procedural default if the petitioner can establish that an error of constitutional magnitude "has probably resulted in the conviction of one who is actually innocent.").  As discussed below, Petitioner's actual innocence claim is also fatally flawed.

A petitioner's assertion of "actual innocence" does not operate as a magic talisman to overcome a procedural bar.[10]  This exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*,

_____

[10]"Actual innocence" must be accompanied by a constitutional claim.  *See Herrera v. Collins*, 506 U.S. 390, 404 (1993) (holding that "actual innocence" is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits).

53 F.3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause) (footnote omitted).

Petitioner must show constitutional error coupled with "new reliable evidence -- whether it

be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

evidence -- that was not presented at trial."  *Schlup v. Delo*, 513 U.S. at 327.

The Supreme Court has held that a petitioner in a collateral proceeding who wishes

to establish his actual innocence to avoid a procedural bar to consideration of the merits

of his underlying claim must "demonstrate that, in light of all the evidence, it is more likely

than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523

U.S. 614, 623 (1998) (quotations omitted); *see also Schlup v. Delo,* 513 U.S. at 327-28.

To prevail, the petitioner must demonstrate that he has newly discovered evidence which,

if presented at trial would establish factual innocence rather than mere legal insufficiency.[11]

*See Sawyer v. Whitley,* 505 U.S. 333, 339 (1992).  *See also Schulp v. Delo,*  513 U.S. at

316 (holding that "[w]ithout any new evidence of innocence, even the existence of a

concededly meritorious constitutional violation is not in itself sufficient to establish a

miscarriage of justice that would allow a habeas court to reach the merits of a barred

claim."); *High v. Head*, 209 F.3d 1257, 1270 (11th Cir. 2000) (citation omitted).

A petitioner's bare allegation that he is innocent of the crime, without more, does not

establish cause sufficient to overcome a procedural bar. In this case, because Petitioner

has not produced exculpatory scientific evidence, any trustworthy eyewitness accounts in

contravention to that presented at trial, or any critical physical evidence that was not

presented at trial, he has failed to establish that his case involved a fundamental

---

[11]The Supreme Court articulated the standard for determining actual innocence in *Kuhlmann*, stating that "the prisoner must 'show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt.' " *Kuhlman v. Wilson*, 477 U.S. 436, 454 n.17 (1986) (citation omitted).

miscarriage of justice where alleged constitutional violations resulted in the conviction of an innocent person.

Petitioner had an opportunity to present testimony at his Rule 3.850 evidentiary hearing regarding his "alibi" witnesses and the "eyewitness" Petitioner asserts was prepared to testify, based on his personal knowledge, that Petitioner was not the robber because he witnessed the robbery while standing in front of the victim's house.

Petitioner presented the testimony of one "alibi" witness during the evidentiary hearing. Petitioner's alibi witness, Inmate Michael Brown, testified that he and Petitioner were together most of the day when the robbery occurred. According to Brown, he met Petitioner four months before the robbery. Brown acknowledged that he and Petitioner were not close friends, but they had met a few times to "snort a little cocaine." Brown's testimony regarding the time he and Petitioner met on the day in question was vague, as were details regarding how they spent the day. Moreover, Petitioner's testimony that it took him more than three months[12] to learn the names of his "alibi" witnesses because he "had just met them" contradicts Brown's testimony that he had known Petitioner for four months.

Petitioner went to trial on November 17, 1992. The Court takes judicial notice of information available at the Florida Department of Corrections ("DOC") Offender Information Network, viewed September 13, 2005, stating that Petitioner was placed in the DOC's custody on January 19, 1993. *See* Fed. R. Evid. 201.

According to Brown, he was placed in the custody of the DOC in late 1993. Brown testified that Michael Mandy, another of Petitioner's prospective "alibi" witnesses, contacted him in 1993 to tell him that Petitioner wanted Brown to testify on his behalf. When asked

---

[12]Petitioner was arrested on July 13, 1992, *see* Dkt. 22, Ex. 20, Vol. I at 8-9; he alleges that he presented a list of the names of his alibi witnesses to trial counsel in late October, *see* Dkt. 22, Ex. 20, Vol. I, Supp. Hr'g Tr. at 44.

if he was sure he was not contacted 1992, Brown replied that he was certain that he was first contacted about testifying for Petitioner by Michael Mandy <u>after</u> he began serving his prison sentence in 1993.  Brown stated that he also spoke with Petitioner in 1993 about being an alibi witness for him.  Brown later testified, however, that he and Petitioner had not had any contact while incarcerated.

Brown admitted that he had no independent recollection of the date on which he, Mandy, and Petitioner allegedly spent the day together. He testified that when both Mandy and Petitioner contacted Brown about testifying as an alibi witness, they refreshed his memory by telling him that the date he needed to remember was Mother's Day in 1992. *See* Dkt. 22, Ex. 20, Vol. I, Supp. Hr'g Tr. at 8-27.

Having had an opportunity to hear Brown's testimony and observe his demeanor during the evidentiary hearing, the trial court issued an order denying Petitioner's Rule 3.850 motion, implicitly rejecting the assertion that Brown could provide Petitioner an alibi for the time during which the robbery occurred.

"A petitioner is not entitled to a hearing on the threshold issues of cause and prejudice or manifest injustice without first proffering specific facts which support a finding that one of these exceptions to the procedural default rule exists." *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996).  The Court finds that Petitioner does not raise a colorable claim of actual innocence to overcome the procedural default. *McCoy v. Newsome*, 953 F.2d 1252, 1261-62 (11th Cir.), *cert. denied*, 504 U.S. 944 (1992).

Petitioner has not made the requisite showing of entitlement to the cause and prejudice exception to the procedural bar to these grounds or demonstrated that a fundamental miscarriage of justice will result if they are not addressed on the merits. It would be improper for a federal habeas court to discuss the merits of a claim that has been

procedurally defaulted in state court. *See Kight v. Dugger*, 50 F.3d 1539, 1543 (11th Cir. 1995).

## CONCLUSION

For the foregoing reasons, the Court finds that Petitioner has failed to establish that he is entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1.      The Amended Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 9).

2.      The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on September 19, 2005.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
All Parties/Counsel of Record

SA:jsh